UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LOURDES JAROSS and KEN JAROSS, individually and as husband and wife,<br><br>         Plaintiffs,<br><br>v.<br><br>SHAUN PHILLIPS,<br><br>         Defendant. | 2:10-cv-01631-PMP-GWF<br><br>ORDER |

Presently before the Court is Defendant Shaun Phillips' Motion for Summary Judgment (Doc. #17), filed on May 2, 2011. Plaintiffs Lourdes Jaross and Ken Jaross filed a Response (Doc. #19) on May 26, 2011. Defendant filed a Reply (Doc. #20) on June 8, 2011.

**I. BACKGROUND**

Plaintiffs Lourdes Jaross ("Jaross") and Ken Jaross ("Mr. Jaross") were in Las Vegas in February 2008. (Pls.' Resp. to Def.'s Mot. for Summ. J. (Doc. #19) ["Pls.' Resp."], Ex. A, Dep. of Lourdes Jaross at 22:13-16.) The Jarosses went to Privé, a nightclub at the Planet Hollywood Resort and Casino, at around 12:00 a.m. on February 5, 2008. (Id. at 29:13; 27:12-14; 22:20-21.) Defendant Shaun Phillips ("Phillips") arrived at Privé sometime between 12:30 and 1:30 a.m. that same morning. (Pls.' Resp., Ex. E, Dep. of Shaun Phillips at 17:17-20.) At around 2:33 a.m., an incident occurred between Jaross and Phillips. (Pls.' Resp., Ex. A at 62:6-10; 19:7-14.)

1   Phillips, who is 6'3" and weighs 250 pounds, was in a private table and seating
2   area. (Pls.' Resp., Ex. E at 30:18-22; 23:5-8.) He was with three other individuals. (Id. at
3   71:10-18.) Next to this private area was a raised platform stage that surrounded the club's
4   main dance stage. (Pls.' Resp., Ex. A at 31:11-13.) As the Jarosses were heading out of the
5   club, Jaross's husband suggested she get on the stage and dance before they left. (Id. at
6   31:5-7.)
7   Jaross, who is 5'2" and weighed 130 pounds at the time, states she pulled herself
8   onto the platform stage without assistance and started dancing next to Phillips. (Id. at
9   65:18-20; 31:19-32:2.) Another woman was on the other side of Phillips. (Id. at 43:18-20.)
10  Jaross states she was dancing next to Phillips for a few minutes when she felt an impact to
11  her head. (Id. at 31:25-32:7; 32:18-19.) At her deposition, Jaross testified that Phillips'
12  elbow was the object that struck her face. (Id. at 32:13-15.) However, upon further
13  questioning, Jaross testified she does not know if Phillips elbowed her in the head; she only
14  knows there was an impact to her head. (Id. at 63:15-17.) The impact of the hit was to the
15  side of Jaross's forehead. (Id. at 40:12-15.)
16  Jaross lost her balance after she was hit, causing her to fall backwards. (Id. at
17  34:9-11.) Jaross states she grabbed part of Phillips' back or belt as she was falling. (Id. at
18  33:20-25.) She does not recall whether Phillips also fell because she immediately ran to the
19  restroom after the incident. (Id. at 39:3-11.) Jaross states it is possible she pulled Phillips
20  off the stage as she was falling, but she does not remember. (Id. at 39:9-12.) Jaross was not
21  looking at Phillips when she was struck but asserts Phillips had to be the person who hit her
22  because he was the only person next to her. (Id. at 33:1-7.)
23  Jaross initially testified that she and Phillips had no verbal exchange until after
24  she was hit. (Id. at 32:20-23.) However, when given a police report that contradicted her
25  testimony, Jaross provided a different account of the events, asserting the report refreshed
26  her recollection of the incident. (Id. at 65:15-66:12.) With her refreshed recollection,

2

Jaross avers Phillips first spoke to her when she initially tried to pull herself up on the stage, telling her not to get on the stage. (Id. at 66:9-12.)

Jaross admits Phillips did not say anything to indicate he was going to hurt her deliberately, but she alleges he gave her a look that gave her cause for concern. (Id. at 45:4-6; 44:9-19.) Jaross believes the hit was intentional based on its forceful impact. (Id. at 42:19-25.) She also assumes Phillips hit her intentionally because she got between Phillips and the other woman who was dancing next to him on the stage. (Id. at 43:1-44:6.) Jaross admits the look Phillips gave her and the injury she suffered are the only bases she has for her belief that Phillips deliberately hit her. (Id. at 44:24-45:3.)

Phillips provides a different account of the events. He claims their interaction first began when Jaross tapped him on the leg and asked if she could get up on the raised platform stage. (Pls.' Resp., Ex. E at 24:2-6.) According to Phillips, he told Jaross yes and helped her get on the stage. (Id. at 25:2.) Phillips found Jaross's dancing to be "wild and crazy," causing him to tell her to get off of the stage because it was a private area. (Id. at 25:4-11.) Phillips claims he then helped Jaross get off of the stage. (Id. at 26:5-7.)

After helping Jaross get down from the stage, Phillips alleges Jaross grabbed the back of his jeans, causing him to fall backwards. (Id. at 26:20-27:4.) Phillips avers he was able to land on his feet on the floor. (Id. at 28:3-5.) Phillips assumes he landed on top of Jaross because she was holding her head when he looked back at her. (Id. at 27:14-17.) Phillips does not remember feeling any part of his body strike her during their brief encounter. (Id. at 29:2-4.)

After the incident, Jaross's husband approached Phillips to confront him. (Pls.' Resp., Ex. D, Dep. of Ken Jaross at 26:16-19.) Mr. Jaross did not observe the incident, and he does not remember exactly what he saw that prompted him to confront Phillips. (Id. at 27:2-5; 39:10-18.) Mr. Jaross claims the tone of Phillips' voice was threatening, but Mr. Jaross could not recall whether Phillips actually threatened him during the course of the

3

confrontation. (Id. at 31:20-24.) Additionally, Mr. Jaross perceived that Phillips was "put off" when Mr. Jaross confronted him, but he could not say whether Phillips was angry. (Id. at 32:17-19; 31:16-17.) Mr. Jaross believes Phillips intentionally struck Jaross on the bases that an injury occurred and Phillips did not apologize. (Id. at 46 20:23.) Just as Mr. Jaross did not observe the incident, the individuals in Phillips' group did not observe the incident either. (Pls.' Resp., Ex. E at 32:21-33:5.)

When medical personnel arrived at the scene, they examined Jaross and informed her she did not have a concussion. (Pls.' Resp. Ex. A at 42:4-9.) Jaross was given the option of either going to the hospital at that time or waiting until the next day to be "checked out." (Id. at 42:9-11.) Jaross chose the latter option. (Id. at 42:11-12.) She did not feel as though her injury was severe enough to require an overnight hospital stay. (Id. at 47:8-12.)

A police officer arrived to investigate the incident and spoke to Jaross and Phillips separately. (Id. at 50:15-16; 55:12-16.) Jaross states the officer ultimately decided not to file a police report, as he concluded it was an accident. (Id. at 51:19-21.) Later that day, Jaross went to the police station to file a police report. (Id. at 67:2-14.) Sometime after Jaross returned home to Texas, the investigating officer who had been assigned to the case informed Jaross he could not press charges due to the lack of witnesses. (Id. at 68:15-69:5.)

As a result of the impact to her head, Jaross had a bump on her forehead and bruising around her forehead and eye. (Id. at 63:18-23; 86:9-17.) Jaross claims her headaches would not subside and her emotional pain worsened in the days following the incident. (Id. at 75:4-25.) According to Jaross, she had difficulty sleeping and concentrating on work for months after the incident due to the trauma she experienced. (Id. at 76:14-77:24; 78:3-5.) Jaross does not claim she still is suffering from the injury, nor has any doctor told her she will suffer a permanent injury because of the incident. (Id. at 83:3-

6; 112:2-5.)

Jaross and her husband filed a Complaint in the District Court of Clark County, Nevada, asserting claims of negligence, battery, loss of consortium, and requesting punitive damages. (Def.'s Notice, Ex. 1 at 2-4.) Phillips removed to this Court on September 22, 2010.

Phillips now moves for summary judgment, arguing Jaross has not provided evidence of negligence or battery. Phillips asserts he could not be found negligent because there is "no evidence of his conduct whatsoever." (Def.'s Mot. for Summ. J. Pursuant to FRCP 56 (Doc. #17) ["Def.'s Mot."] at 6.) Phillips further argues he did not owe a duty to Jaross because she assumed the risk of being injured while dancing on the platform in a crowd. Phillips contends he owed no general duty to Jaross to protect her from colliding with another patron.

Additionally, Phillips argues that the intention required for a claim of battery is not present in this case. Next, Phillips argues that Jaross's punitive damages claim must also fail due to a lack of malice and oppression in his actions. Finally, Phillips asserts that because Jaross's negligence and battery claims fail as a matter of law, Mr. Jaross's loss of consortium claim also must fail.

Jaross argues that she has provided sufficient evidence that Phillips intentionally struck her because he did not want her in his "'area.'" (Pls.' Resp. at 4.) In support of her negligence claim, Jaross argues that Phillips had a general duty of care towards her, regardless of whether Phillips intentionally struck her. Jaross asserts Phillips breached that duty when he struck Jaross in the face and pushed her "hard enough to knock her off the stage . . . and cause a massive black eye." (Pls.' Resp. at 6.) Finally, Jaross contends punitive damages are appropriate due to the presence of malice in Phillips' actions.

Phillips replies that there is no evidence that he was the individual who struck Jaross. Furthermore, Phillips contends there is no evidence he acted intentionally, even if

1  he was the individual who struck Jaross.  Phillips asserts that the fact an injury occurred is
2  not enough to infer negligence.  Finally, Phillips argues that Mr. Jaross's testimony about
3  Phillips' demeanor after the incident does not create a material factual issue.

4  **II. DISCUSSION**

5        Summary judgment is appropriate "if the movant shows that there is no genuine
6  dispute as to any material fact and the movant is entitled to judgment as a matter of law."
7  Fed. R. Civ. P. 56(a).  As determined by the governing substantive law, a material fact is
8  one which might affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S.
9  242, 248 (1986).  An issue of material fact is genuine if a reasonable fact finder could
10 return a verdict for the non-moving party based on the evidence.  Id.

11       The moving party bears the initial burden of proving there is no genuine issue of
12 material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To show that a material
13 fact cannot be genuinely disputed, the movant must cite to particular parts of materials in
14 the record or show that the materials cited do not establish the presence of a genuine
15 dispute.  Fed. R. Civ. P. 56(c)(1).  If the moving party meets that burden, the non-moving
16 party must show that a material fact is genuinely disputed by citing to particular parts of
17 materials in the record or showing that the materials cited do not establish the absence of a
18 genuine dispute.  Id.

19       An affidavit or testimony lacking in detailed facts or supporting evidence is
20 insufficient to create a genuine issue of material fact.  FTC v. Publishing Clearing House,
21 Inc., 104 F.3d 1168, 1171 (9th Cir. 1997).  Reasonable inferences may be made from facts
22 established by circumstantial evidence, but a reasonable inference cannot be based on mere
23 suspicion or speculation.  United States v. Thomas, 453 F.2d 141, 143 (9th Cir. 1971).
24 Courts must view the evidence in the light most favorable to the non-moving party.  Scott v.
25 Harris, 550 U.S. 372, 378 (2007).
26 ///

**A. Battery**

Under Nevada law, an individual's actions constitute battery where there is "any willful and unlawful use of force or violence upon the person of another." Nev. Rev. Stat. § 200.481(1)(a). A plaintiff must establish a battery claim by showing the actor "intended to cause harmful or offensive contact." Burns v. Mayer, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001). This includes even the slightest intentional and unwanted exertion of force upon another individual. Hobbs v. State, 251 P.3d 177, 180 (Nev. 2011). Additionally, the plaintiff must establish that the contact actually occurred. Burns, 175 F. Supp. 2d at 1269.

Where an offense consists of an act combined with intent, it is just as necessary to prove intent as it is to prove the act itself. Wilson v. State, 450 P.2d 360, 361 (Nev. 1969). A fact finder may ascertain an individual's intent through inferences based on the individual's conduct and the attendant circumstances of an incident. State v. Thompson, 101 P. 557, 560 (Nev. 1909). Additionally, if the plaintiff suffered an injury, certain inferences, including willfulness, reasonably may be drawn from the nature and extent of the injury. Hern v. State, 635 P.2d 278, 281 (Nev. 1981). If an injury was accidentally inflicted, it is not battery. McDonald v. Sheriff of Carson City, 512 P.2d 774, 775 n.1 (Nev. 1973).

Jaross has failed to present evidence raising a genuine issue of material fact that Phillips actually struck her. Jaross asserts she was struck by something she assumes was Phillips' elbow, but Jaross did not see who or what hit her; she only felt an impact. Jaross contends that it had to be Phillips who hit her because he was the only person next to her. However, Jaross also testified she assumed Phillips struck her because she got between Phillips and another woman. Phillips, therefore, was not the only person next to Jaross on the platform stage, and thus was not the only person who possibly could have struck Jaross. Viewing the evidence in the light most favorable to Jaross, Jaross has failed to present evidence from which a reasonable fact finder could find that Jaross has met her burden of

showing that Phillips struck her.

Even if a reasonable fact finder could find that Phillips struck Jaross, Jaross fails to present evidence raising a genuine issue of material fact that Phillips did so intentionally. First, Jaross's argument that Phillips must have hit her intentionally based on the impact of the hit is insufficient for a reasonable fact finder to determine that Phillips acted with intent. There was no evidence of use of a weapon, repeated blows, injuries inconsistent with the defendant's version of events, or previous incidents between the parties from which intent could be inferred. See, e.g., Hern, 635 P.2d at 532-33; Turpen v. State, 583 P.2d 1083, 1084 (Nev. 1978); Wallin v. State, 558 P.2d 1143, 1144 (Nev. 1977). Jaross received a black eye as a result of the impact to her head, but the nature and extent of that injury is as consistent with an accidental injury as an intentional one under the circumstances. An accidental collision with Phillips, at 6'3" and 250 pounds, could result in a strong impact to Jaross, who is considerably smaller at 5'2" and 130 pounds. Though Jaross felt a strong impact, that alone does not raise a genuine issue of fact that a battery occurred. A reasonable fact finder could not find that Phillips struck Jaross intentionally based solely on the fact that Jaross experienced a strong impact to her head and suffered an injury.

Next, Jaross's argument Phillips must have hit her willfully because he did not want her in his "area" does not raise a genuine dispute as to a material issue of fact that Phillips committed battery. An individual's intent to frighten and intimidate his victim may be considered when ascertaining that individual's intent to harm his victim. See Wilson, 450 P.2d at 362 (holding a razor against victim's throat and demanding the victim follow orders shows an intent to frighten and intimidate and is sufficient evidence for a reasonable jury to find an intent to inflict bodily harm). However, Jaross's only communication with Phillips was when Phillips told her he did not want her on the stage and that he gave her a "look." There is no evidence that Phillips indicated he was going to hurt Jaross deliberately, nor is there evidence that Phillips made any threats against her. Moreover,

Jaross admits that Phillips did not appear to be angry. Considering the facts in the light most favorable to Jaross, a reasonable fact finder could not find that Phillips hit Jaross intentionally because he did not want her in his "area."

Additionally, Jaross's assumption that Phillips hit her because she got between Phillips and another woman does not raise a genuine issue of material fact that Phillips hit Jaross intentionally. Jaross concedes it is only her assumption that Phillips struck her because she got between Phillips and another woman. A reasonable inference cannot be made based on mere speculation, and testimony that lacks sufficient supporting facts does not raise a genuine issue of material fact. Accordingly, Jaross's assumption that Phillips hit Jaross intentionally because she got between Phillips and another woman is not sufficient to raise a genuine issue of material fact that Phillips struck her intentionally.

Furthermore, Mr. Jaross's account of Phillips' post-incident behavior does not raise a genuine issue of fact that Phillips intentionally struck Jaross. The fact finder can consider post-incident conduct, such as a lack of remorse, an effort to conceal the conduct, demeanor inconsistent with the defendant's version of events, or an attempt to flee police as evidence of intent. See Flores v. State, 120 P.3d 1170, 1181 (Nev. 2005) (stating that evidence regarding lack of remorse was evidence of consciousness of guilt); Briano v. State, 581 P.2d 5, 8 (Nev. 1978) (stating that post-incident attempt to conceal the incident constitutes evidence of intent); Edwards v. State, 524 P.2d 328, 332 (Nev. 1974). Mr. Jaross admits he did not see Phillips strike Jaross and could not remember what prompted him to confront Phillips in the first place. Mr. Jaross characterized Phillips' behavior during the confrontation as threatening and said Phillips seemed "put off." Though Mr. Jaross perceived Phillips as being "put off" when Mr. Jaross approached him, Phillips could have reacted that way for a number of reasons. That, without any supporting evidence, does not raise a genuine issue of material fact that Phillips struck Jaross at all, let alone intentionally.

Additionally, Mr. Jaross testified that he believes Phillips struck his wife intentionally based on the fact that Phillips did not apologize.  While a lack of remorse for one's actions may be evidence of an individual's state of mind, Mr. Jaross admittedly did not know why he confronted Phillips, and he did not see Phillips strike Jaross.  Additionally, Phillips stayed at the scene and spoke to police when they arrived.  There is no evidence he attempted to flee, conceal his participation in the incident, or offer a version of events that was inconsistent with the injuries sustained.  Mr. Jaross's testimony lacks sufficient evidence to raise a genuine issue of material fact that Phillips struck Jaross, intentionally or at all.  Viewing the facts in the light most favorable to Jaross, a reasonable fact finder could not find that Phillips acted with intent based on Mr. Jaross's account of Phillips' post-incident behavior.

Individually, the various assertions and assumptions raised by Jaross and Mr. Jaross do not raise a genuine issue of material fact that Phillips struck Jaross intentionally.  When construed together, Jaross and Mr. Jaross's assertions and assumptions also do not raise a genuine issue of material fact that Phillips struck Jaross intentionally.  The evidence of the incident itself and the evidence of Phillips' behavior throughout and after his encounter with Jaross are insufficient to raise a genuine issue of material fact that Phillips acted with intent.  Jaross felt an impact to her face and received an injury but does not know who or what actually struck her.  Jaross was concerned by a look Phillips gave her, but she admits Phillips did not threaten her or seem angry.  Finally, not only did Phillips not flee before police arrived, but he remained there and spoke with the police when they arrived.  Upon evaluating all of the evidence together, Jaross fails to present evidence raising a genuine issue of material fact that Phillips hit Jaross.  Even if Jaross could raise a genuine issue of material fact that Phillips struck her, Jaross's claim of battery could not withstand summary judgment because a reasonable fact finder could not find Phillips struck Jaross with intent.

**B. Negligence**

To prove negligence, the plaintiff must show: "(1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages." Scialabba v. Brandise Constr. Co., Inc., 921 P.2d 928, 930 (Nev. 1996). "Negligence is never presumed but must be established by substantial evidence." Gunlock v. New Frontier Hotel Corp., 370 P.2d 682, 684 (Nev. 1962). The mere occurrence of an accident or injury does not give rise to a presumption of negligence. Id. Whether a duty of care exists is a question of law to be determined by a court. Scialabba, 921 P.2d at 930. All individuals have a general duty to act reasonably under the circumstances. Moody v. Manny's Auto Repair, 871 P.2d 935, 943 (Nev. 1994).

Part of the court's duty analysis involves determining whether the plaintiff assumed any risk by engaging in a certain activity such that the defendant owes no duty to the plaintiff. Turner v. Mandalay Sports Entm't, LLC, 180 P.3d 1172, 1177 (Nev. 2008). Under the doctrine of primary implied assumption of risk, the court looks to whether an individual impliedly assumed the risks that are inherent in a particular activity. Id. If so, the defendant owed no duty to the plaintiff. Id.

Nevada has not addressed the question of what duty one patron in a nightclub or dance hall owes to another patron. Where a state court has not addressed an issue, the task of a federal court is "to predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." Credit Suisse First Boston Corp. v. Grunwald, 400 F.3d 1119, 1126 (9th Cir. 2005) (quotations omitted). In making that prediction, federal courts look to existing state law without predicting changes in that law. Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1203 (9th Cir. 2002). However, "federal courts are not precluded from affording relief simply because neither the state supreme court nor the state legislature has

11

enunciated a clear rule governing a particular type of controversy or claim." Vernon v. City of Los Angeles, 27 F.3d 1385, 1391 (9th Cir. 1994).

Generally, courts in other jurisdictions which have addressed the issue have held that primary implied assumption of risk is applicable in certain non-contact sporting activities, and co-participants therefore owe no duty of care to each other unless they engage in some activity that increases the risks beyond those inherent to the activity. See, e.g., Staten v. Superior Court, 45 Cal. App. 4th 1628, 1633-35 (1996) (holding that being cut by the blade of a fellow figure skater is a risk inherent to group figure skating session); McDaniel v. Dowell, 210 Cal. App. 2d 26, 36 (1962) (holding that risk of collision with another skier is inherent to use of ski facilities). The Supreme Court of California reasoned that the combination of each individual participant's fluidity of action and the presence of co-participants poses an inherent risk of collision in certain non-contact sporting activities. Staten, 45 Cal. App. 4th at 1634 (assumption of risk applies to figure skating and snow skiing, two activities in which one acts alone but in the presence of others). Another driving policy consideration is to "avoid imposing a duty which might chill vigorous participation in the implicated activity and thereby alter its fundamental nature." Regents of Univ. of Cal. v. Superior Ct., 41 Cal. App. 4th 1040, 1046 (1996).

Specifically with respect to social dancing, the Court of Appeals of Louisiana has held that social dance participants assume the inherent risks associated with social dancing, including the risk of contact with other dancers. Heard v. Bonnie & Clyde's of Hattiesburg, Inc., 501 So.2d 1003, 1007 (La. Ct. App. 1987) (holding the plaintiffs assumed the risk of being bumped, jostled, or falling down by choosing to dance on the same dance floor with other individuals who were dancing at a fast pace but who were not engaged in boisterous conduct or doing anything out of the ordinary). On the other hand, the Court of Appeals of California has held that recreational dancing is not an inherently dangerous activity, making primary implied assumption of risk inapplicable. Bush v. Parents Without Partners, 17 Cal.

App. 4th 322, 328 (1993) (holding that social dancing was not inherently dangerous, and, even if it was, slipping and falling on a dance floor is not an inherent risk of social dancing); but see Saville v. Sierra Coll., 133 Cal. App. 4th 857, 869 (2005) (suggesting Bush court erred by confining primary implied assumption of risk only to sports and holding the doctrine applied in a peace officer training class involving arrest and control technique training).

The Court concludes Nevada would hold that being bumped, jostled, or colliding with another patron is an inherent risk of social dancing. Although Nevada has not addressed the liability of co-participants in a sporting or recreational activity, Nevada has held that an operator of a sports or activity venue does not need to protect patrons from a known or obvious aspect of attending a certain sporting event or activity. Turner, 180 P.3d at 1175 (holding that baseball stadium operator had to provide sufficient amount of protected seating and must provide protection for spectators in the most dangerous parts of the stadium, but otherwise owed no duty to protect patrons from errant baseballs). The Nevada Supreme Court reasoned that an operator of a sports or activity venue should not be required to take precautions that are unreasonable in light of the nature of the sport because doing so may alter the nature of the game as a spectator sport. Id. at 1175-76. However, an operator of a sports or activity venue must protect patrons from an "unduly high risk of injury." Id. at 1176.

Thus, it appears that Nevada has adopted the general framework of other courts addressing co-participant liability that no duty is owed for risks inherent to the activity, but a duty exists not to engage in acts or omissions that increase the risk beyond what would be expected. Nevada also has endorsed the view that individuals ought to be able to participate in sports and similar recreational activities without fear of being held liable for a risk that is inherent in the nature of the sport or activity. It follows that Nevada would hold that co-participants of certain sporting or recreational activities, like operators of sporting venues,

have a duty of care not to increase the risks above those inherent in the sport or activity but should not be required to take precautions that are unreasonable in light of the nature of the sport or activity.

Like skiing and ice skating, social dancing involves the fluid movement of individuals near co-participants engaged in the same activity, and thus a risk of collision with other dancers is inherent in the activity. Further, Nevada likely would endorse a policy of encouraging individuals to be able to engage in social dancing without fear of being sued for every bump, jostle, or collision on the dance floor, unless they somehow are increasing the risk beyond what would be expected in ordinary social dancing.

Here, even though there were only a few other individuals on the particular stage on which Jaross and Phillips were dancing, Jaross assumed the risk of contact with other dancers, particularly where Jaross testified she placed herself between two other people. Further, Jaross has presented no evidence raising a genuine issue of material fact that Phillips was increasing the risks above those that are inherent in dancing around other individuals. Phillips therefore owed no duty to Jaross.

Even if this Court found that Phillips owed Jaross a duty, Jaross failed to present evidence raising a genuine issue of material fact that Phillips breached his duty to act reasonably under the circumstances. Jaross testified that she and Phillips were next to each other on the stage, and Phillips gave Jaross a look. Then, Jaross felt an impact to her head. She assumed Phillips struck her with his elbow, but Jaross could not positively state that Phillips was the individual who struck her. There were no witnesses who observed the incident, and Jaross could not provide specifics about how the incident occurred. Jaross was able to state only that she was struck and received a black eye as a result. She provided no evidence that Phillips was dancing wildly or acting unreasonably in any way.

The mere fact that the incident occurred does not give rise to the presumption that it occurred due to Phillips' negligence. Jaross received an injury, but an injury alone does

not raise a genuine issue of material fact that she received that injury because Phillips breached his duty to act reasonably under the circumstances. Jaross provided no evidence of Phillips' conduct at all. In fact, she did not see if Phillips was even the individual who struck her.

Even if a reasonable fact finder could find that Phillips struck Jaross, there is no evidence that Phillips negligently did so. A claim of negligence must be supported by substantial evidence, and the fact that an incident occurred does not raise a genuine issue of material fact that Phillips breached his duty. Weighing all of the facts in the light most favorable to Jaross, a reasonable fact finder could not find that Phillips breached his duty of reasonable care because there is no evidence of Phillips' unreasonable conduct. Accordingly, Jaross's negligence claim could not withstand summary judgment even if Phillips owed her a duty.

**C. Punitive Damages**

To receive punitive damages, the plaintiff must prove by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, express or implied. Nev. Rev. Stat. § 42.005(1). Oppression is defined as "despicable conduct that subjects a person to cruel and unjust hardship with conscious disregard of the rights of the person." Id. § 42.001(4). Malice, express or implied, means "conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others." Id. § 42.001(3).

Conscious disregard requires "knowledge of the probable harmful consequences of a wrongful act and a willful and deliberate failure to act to avoid those consequences." Id. § 42.001(1). Thus, there must be evidence that a defendant acted with a culpable state of mind, and the defendant's conduct must, "at a minimum, exceed mere recklessness or gross negligence." Countrywide Home Loans, Inc. v. Thitchener, 192 P.3d 243, 255 (Nev. 2008). Punitive damages are not meant to compensate the victim but instead are meant to

punish oppressive, fraudulent or malicious conduct. <u>Siggelkow v. Phoenix Ins. Co.</u>, 846 P.2d 303, 304 (Nev. 1993).

Jaross has no claim for punitive damages because her underlying claims for battery and negligence cannot withstand summary judgment. Nevertheless, even if either of those claims could survive summary judgment, Jaross's punitive damages claim could not. Jaross did not produce evidence raising a genuine issue of material fact that Phillips acted with conscious disregard of her rights. Phillips did not threaten Jaross, but Jaross states Phillips gave her a look, causing her to be concerned. The fact that Phillips gave Jaross a look that made her nervous does not raise a genuine issue of material fact that he acted with a conscious disregard for her rights.

Jaross also assumes Phillips hit her intentionally because she got between Phillips and another woman. Jaross's assumption that Phillips hit her intentionally because she got between Phillips and another woman does not raise a genuine issue of material fact that Phillips acted with a culpable mind. Viewing all of the facts in the light most favorable to Jaross, a reasonable fact finder could not find that Phillips acted with malice or oppression. Jaross's claim for punitive damages does not withstand summary judgment.

**D. Loss of Consortium**

A loss of consortium claim is dependant upon the success of the other claims in the suit. <u>Turner</u>, 180 P.3d at 1178 n.31. Because the Court will grant summary judgment in favor of Phillips on all of Jaross's claims, Mr. Jaross's loss of consortium claim does not withstand summary judgment.

///
///
///
///
///

## III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Shaun Phillips' Motion for Summary Judgment (Doc. #17) is hereby GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court shall forthwith enter Judgment in favor of Defendant Shaun Phillips and against Plaintiffs Lourdes and Ken Jaross.

DATED: August 9, 2011

_____
PHILIP M. PRO
United States District Judge